**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Alden A. Thomas (031900)
aat@jaburgwilk.com
Aaron K. Haar (030814)
akh@jaburgwilk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angela Staeheli, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>Adler University, an Illinois not-for-profit corporation,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT** |

Plaintiff Angela Staeheli alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for racial discrimination, harassment, and retaliation in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*.

## PARTIES, JURISDICTION & VENUE

2. Plaintiff Angela Staeheli is an individual who, at all relevant times, resided in the State of Arizona, Maricopa County.

3. Defendant Adler University is an Illinois not-for-profit corporation with its central administrative offices in the State of Illinois, Cook County.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.

5. Personal jurisdiction over Defendant Adler University is proper in this District because Adler University purposefully directed its activities or consummated some transaction within the forum, the claims arise out of or relate to those forum-related activities, and exercising jurisdiction is reasonable.

6. Venue is proper in this District in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

7. Plaintiff Angela Staeheli is the chief operating officer of Scarlett Ink Publishing, holds a master's degree in military psychology, and is a successful author in her own right, having published numerous books through traditional publishing.

8. In 2018, Ms. Staeheli decided to continue with her schooling to earn a doctoral degree.

9. Ms. Staeheli had earned her master's degree in military psychology from Defendant Adler University in October 2018.

10. For her doctoral degree, Ms. Staeheli considered various universities, both around Phoenix and online, that would allow her to continue living and working in Arizona.

11. Ms. Staeheli ultimately settled on Adler University because she had had a good experience in her master's degree program, and it allowed her to complete all her doctoral coursework online from her home in Mesa, Arizona and to complete all internship requirements in an Adler-approved nonprofit organization in the State of Arizona.

12. Ms. Staeheli is white.

13. Defendant Adler University is an accredited university that offers various graduate and doctoral degrees in psychology and psychology-related fields.

14. Adler University's stated mission is "graduating socially responsible practitioners, engaging communities, and advancing social justice."

15. The homepage of Adler University's website greets visitors with the statement, "We stand for social justice."

16. In the "Why Us" section of Adler University's website, the school professes, "If social justice is your passion, this is where you need to be."

17. In 2018, Ms. Staeheli applied to Adler University's online doctoral program for Industrial and Organizational Psychology (the "DIOP program").

18. Ms. Staeheli was drawn to the DIOP program because she was interested in working with service members and military veterans and in starting a nonprofit to assist veterans transitioning back to civilian life.

19. Ms. Staeheli is a military veteran.

20. Ms. Staeheli's husband is a military veteran.

21. Ms. Staeheli's son is active-duty military.

22. Adler University extended Ms. Staeheli an offer to matriculate in the DIOP program.

23. Ms. Staeheli accepted Adler's offer and enrolled in the online program.

24. In January 2019, Ms. Staeheli began online courses.

25. Ms. Staeheli excelled in her studies.

26. Ms. Staeheli maintained a 4.0 grade point average throughout her master's in military psychology and in the DIOP program until she enrolled in Adler University's Social Justice Practicum, commencing in the Spring of 2020.

27. Adler University requires all students to take the Social Justice Practicum as part of the curriculum.

28. The Social Justice Practicum was not a requirement of Ms. Staeheli's master's degree program.

29. The Social Justice Practicum is a course that spans four terms and includes both a volunteer component and a classroom component, requiring various reflective exercises and projects.

30. Dr. Sheri Lewis, a black professor at Adler, taught the classroom component of the Social Justice Practicum.

31. Ms. Staeheli initially performed well and enjoyed the Social Justice Practicum, maintaining an A for the first couple weeks of the term.

32. Ms. Staeheli's success in the course began to reverse when Dr. Lewis turned the Social Justice Practicum into a racially-charged indictment of all white people.

33. Adler University has a recording of Dr. Lewis's Social Justice Practicum synchronized sessions, which were recorded via Zoom.

34. Dr. Lewis taught that all white people suffer from white fragility.

35. Dr. Lewis taught that all white people exhibit tendencies of white supremacy.

36. Dr. Lewis taught that all police officers relish in exploiting and killing minorities.

37. Dr. Lewis's racial antagonism infected the rest of the course participants.

38. Other students in the course regularly asserted odious pronouncements such as "I hate all white people!" and targeted white classmates with abusive quips, such as "fuck you, colonists!"

39. Ms. Staeheli and other white students were regularly called "racist" in the classroom simply because they were white.

40. Dr. Lewis did not attempt to rein in the racial hostility.

41. Rather, Dr. Lewis encouraged these hostile exchanges.

42. The hostility increased and intensified after the death of George Floyd.

43. In the course of these classroom discussions, Ms. Staeheli expressed disagreement toward the premise that all white people were similarly afflicted with such vile thoughts, tendencies, and shortcomings.

44. Anytime Ms. Staeheli raised concerns about overgeneralizing or stereotyping all white people, she was met with ridicule and ire.

45. Ms. Staeheli began feeling she could not take part in the class or engage in reflective discussions because she was attacked or mocked anytime she spoke.

46. After expressing her contrary viewpoints in front of the class, Ms. Staeheli's grade began to suffer.

47. For example, Ms. Staeheli submitted a reflection paper in response to an assignment that required all students to interview a family member to, among other things, identify the family member's biases and discuss their roles in the cycle of socialization.

48. In that paper, Ms. Staeheli discussed her interview with her developmentally disabled daughter, her experience with bullying, oppression, and discrimination in school and the workplace, and how she ultimately acquired no discernible biases despite exposure to her biological father who strongly espouses biased views.

49. Dr. Lewis gave Ms. Staeheli a 20/40 (50%) on the reflection paper.

50. Dr. Lewis wrote that Ms. Staeheli had "conflated discrimination with white fragility and the effects of white supremacy."

51. Dr. Lewis's comments on the paper insinuated that Ms. Staeheli's daughter could not have possibly ever experienced discrimination simply because she is white, notwithstanding the fact that she had been the victim of discrimination arising from her developmental disability.

52. When Ms. Staeheli raised objections to Dr. Lewis's presumptuous characterization of her daughter, Dr. Lewis dismissed her concerns, advising that she was qualified "to identify areas where students need to grapple with privilege and deconstruct white supremacy."

53. Dr. Lewis also frequently told Ms. Staeheli and other white students that they would fail her course if they did not openly acknowledge their white fragility and white-supremacist tendencies.

54. Dr. Lewis made similar statements in writing on Ms. Staeheli's assignments and on an Adler University message board.

55. Dr. Lewis did not impose similar requirements on students of other races.

56. Upon information and belief, the administration at Adler University would deem it utterly intolerable—indeed, contrary to basic human rights—to tell a black student she would fail if she did not admit she had some assumed shortcoming based on a negative stereotype of black people.

57. Ms. Staeheli resisted the demand to acknowledge she was somehow "less than" other students by mere virtue of her skin color.

58. To her, this hostile environment felt like the opposite of Adler University's stated commitment to social justice.

59. Ms. Staeheli's grade continued to suffer.

60. On July 11, 2020, Ms. Staeheli reported her concerns regarding Dr. Lewis's course to Dr. Donna DiMatteo-Gibson, the director of the DIOP program, and Dr. Michelle Dennis, the chair of the Leadership and Applied Psychology Department.

61. Ms. Staeheli reported numerous instances of inappropriate behavior, including having been "singled out in this class, harassed, bullied, and discriminated against" and having been "called a racist multiple times for no other reason than the fact that [she was] white."

62. Ms. Staeheli also complained of the vicious discriminatory harassment she had experienced at the hands of her classmates.

63. The administrators told Ms. Staeheli they would look into it and get back to her.

64. Despite Ms. Staeheli raising concerns, the University administration did nothing to correct these issues.

65. Soon after Ms. Staeheli pled for the administration's help, Dr. Lewis openly and defiantly taunted Ms. Staeheli by announcing to the entire class that a white

female student had made a complaint against her because the student was struggling with her white fragility and refusing to accept her white supremacy and white privilege.

66. The announcement was an implicit threat that Dr. Lewis knew about Ms. Staeheli's complaint, that the administration would not take Ms. Staeheli's complaints seriously, that Dr. Lewis could get away with anything, and that Ms. Staeheli better think twice before lodging further complaints.

67. The announcement was in retaliation for Ms. Staeheli's complaint.

68. The announcement was intended to make Ms. Staeheli feel even more uncomfortable.

69. The announcement further increased the hostility in the course.

70. Thereafter, Dr. Lewis no longer provided feedback or gave explanations for grades on Ms. Staeheli's papers and assignments, despite regularly assigning her low grades.

71. Ms. Staeheli felt the grades were further retaliation for disagreeing with Dr. Lewis and for lodging a complaint with the administration.

72. Upon information and belief, Dr. Lewis penalized Ms. Staeheli on the assignments in retaliation for expressing disagreement toward and complaining about her discriminatory conduct.

73. The stress of the hostile environment weighed on Ms. Staeheli's other grades, and her 4.0 grade point average fell.

74. The University administration then refused to sign Ms. Staeheli's application to obtain her temporary counseling license while completing her clinic hours, which would have allowed her to earn money while doing the work.

75. To obtain an LPC license, the State of Arizona required Ms. Staeheli to prove she had a master's degree in psychology and to demonstrate she had taken certain courses to qualify for the license.

76. When Ms. Staeheli requested Adler University to complete the form acknowledging she had earned her master's degree and taken certain courses, Adler refused.

77. Adler University gave a vague excuse that the courses did not qualify her to be a counselor.

78. Adler University refused to listen when Ms. Staeheli explained that the licensing requirements were set by the State of Arizona and she merely needed Adler to verify she had taken the courses and earned the degree.

79. Ms. Staeheli felt this refusal to verify her degree and coursework was in further retaliation for having disagreed with and complained about Dr. Lewis.

80. Upon information and belief, the refusal to verify Ms. Staeheli's degree and coursework was in retaliation for having disagreed with and complaining about Dr. Lewis.

81. On June 22, 2020, Ms. Staeheli submitted a written complaint to the Office of Civil Rights ("OCR") at the Department of Education.

82. In the complaint to OCR, Ms. Staeheli reiterated the discrimination she had endured at the hands of Dr. Lewis and other students, that Adler University was refusing to act, and that she was being subjected to a hostile learning environment as a result.

83. Numerous other students have filed complaints against Dr. Lewis for the same or similar conduct.

84. Adler University is and has been well aware of Dr. Lewis's discriminatory practices.

85. Adler University has refused to correct Dr. Lewis's discriminatory practices.

86. By refusing to correct Dr. Lewis's discriminatory practices, Adler University has ratified Dr. Lewis's discriminatory practices.

87. Upon information and belief, Adler University initially refused to comply with the OCR's requests, including for copies of Dr. Lewis's synchronized sessions, which were recorded via Zoom.

88. It became apparent to Ms. Staeheli that Adler University had no interest in providing her a safe and non-discriminatory learning environment.

89. With nowhere else to turn, Ms. Staeheli felt compelled to withdraw from the University.

90. Ms. Staeheli has suffered substantial damages, including lost tuition, education expenses, and severe emotional distress.

91. Adler University's conduct is causing immediate and irreparable harm to Ms. Staeheli and will continue to cause such harm and injury unless enjoined by this court. Ms. Staeheli has no adequate remedy at law.

92. Since she decided to withdraw, Adler University has further interfered with Ms. Staeheli's career and education opportunities.

93. Without explanation, Adler University has withheld sealed copies of Ms. Staeheli's transcripts so she could not apply to transfer credits to other universities.

**COUNT ONE**
**(Discrimination and Harassment in violation of Title VI of the Civil Rights Act of 1964)**

94. Ms. Staeheli realleges all other allegations in this Complaint.

95. Pursuant to 42 U.S.C. § 2000d ("Title VI"), "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

96. Adler University qualifies as a "program" under Title VI. *See* 42 U.S.C. § 2000d-4a(2)(A) (defining program as "all of the operations of . . . a college, university, or other postsecondary institution").

9

97. Adler receives Federal financial assistance because it is "empowered to extend Federal or financial assistance" to its students and programs "by way of grant, loan or contract." *See* 42 U.S.C. § 2000d-1.

98. Ms. Staeheli has been excluded from participation in, been denied the benefits of, or been subjected to discrimination the courses at Adler University on the basis of race, color, or national origin.

99. Ms. Staeheli is a member of a protected class by virtue of her targeted race, color, and/or national origin.

100. Title VI supports claims for reverse discrimination.

101. Ms. Staeheli has suffered numerous adverse actions.

102. Ms. Staeheli was well qualified to continue in pursuit of her education.

103. Ms. Staeheli was treated differently from students of other races.

104. Moreover, Adler University is liable for the race-based harassment and discrimination Ms. Staeheli suffered at the hands of other students.

105. The harassment by other students was so severe, pervasive, and objectively offensive that it deprived Ms. Staeheli of the opportunities and benefits of attending Adler University.

106. Adler University had actual knowledge of this harassment by virtue of Ms. Staeheli's repeated reports of the harassment to Adler University's administrative personnel.

107. Adler University had control over the harassers and the environment in which the harassment occurred.

108. Adler University was deliberately indifferent to the harassment.

109. As a result of Adler University's acts and/or omissions, Ms. Staeheli has incurred damages in an amount to be proven at trial.

110. The complained-of activities were committed maliciously and in conscious disregard of Ms. Staeheli's rights.

## COUNT TWO
**(Retaliation in violation of Title VI of the Civil Rights Act of 1964)**

111. Ms. Staeheli realleges all other allegations in this Complaint.

112. Title VI also prohibits universities that receive Federal financial assistance from retaliating against students for engaging in protected activities.

113. Ms. Staeheli's complaints about discrimination at Adler University were a protected activity under Title VI.

114. Ms. Staeheli was subjected to adverse action as a direct and proximate result of engaging in a protected activity.

115. Ms. Staeheli has been damaged in an amount to be proven at trial.

116. The complained-of activities were committed maliciously and in conscious disregard of Ms. Staeheli's rights.

WHEREFORE, Plaintiff Angela Staeheli respectfully requests entry of Judgment in her favor and against Defendant Adler University as follows:

A. For declaratory relief declaring that Defendant's conduct complained of herein amounted to racial discrimination, harassment, and retaliation, and is unlawful under federal law;

B. For an award of general and specific damages;

C. For an award of punitive damages in an amount appropriate to punish Defendant for its intentional and/or reckless disregard of Ms. Staeheli's rights, and to deter Defendant and others from engaging in such misconduct in the future;

D. For an award of attorney fees and costs as provided by law;

E. For an award of pre- and post-judgment interest on any ultimate award to the maximum amount permitted by law;

F. For preliminary and permanent injunctive relief ordering Defendant and its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and any and all persons or entities in active concert with them, to cease its discriminatory and retaliatory conduct against Ms. Staeheli and others.

G. For such other and further relief as is proper and just.

**JURY TRIAL DEMAND**

Plaintiff Angela Staeheli hereby requests a trial by jury pursuant to Rule 38, Fed. R. Civ. P.

DATED this 22th day of January, 2021.

**Jaburg & Wilk, P.C.**

/s/ Alden A. Thomas
Alden A. Thomas
Aaron K. Haar
Attorneys for Plaintiff