**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angela Staeheli, | No. CV-21-00116-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Adler University, | |
| Defendant. | |

On March 18, 2021, Adler University ("Adler") filed a motion to dismiss Angela Staeheli's first amended complaint for lack of personal jurisdiction or for *forum non conveniens*, which is fully briefed. (Docs. 15, 25, 30.) For the following reasons, Adler's motion is denied.[1]

This case stems from Ms. Staeheli's experiences as a distance-learning student while enrolled in an online doctoral program at Adler. Adler is an Illinois not-for-profit university with campuses in Illinois and Canada, but Adler provides a substantial portion of its services online to remote learners. (Doc. 7 at 2.) Ms. Staeheli, an Arizona resident, first became familiar with Adler in 2016 while searching online for options to earn a master's degree. (Doc. 25-1 at 1.) Noting that Adler's website listed that its online program satisfied Arizona professional licensure requirements, Ms. Staeheli applied to it,

---

[1] Ms. Staeheli's request for oral argument is denied because the issues are adequately briefed and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f)*; Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

indicating she was an Arizona resident.  (*Id.*)  Adler sent Ms. Staeheli an acceptance letter to her Arizona address, and she enrolled in the program.  Ms. Staeheli successfully completed her master's degree in October 2018 and decided to continue her education by pursuing an online doctoral degree with Adler.  (Doc. 7 at 3.)  Adler accepted Ms. Staeheli to the program and she began online courses in January 2019.  (*Id.* at 6.)  Adler subsequently mailed materials, such as textbooks, to Ms. Staeheli's Arizona address.

Adler required Ms. Staeheli to participate in a Social Justice Practicum (the "Practicum") as part of its doctoral curriculum.  (*Id.* at 6.)  Dr. Sheri Lewis, a Black professor, taught the classroom component of the Practicum.  (*Id.*)  Ms. Staeheli alleges that Dr. Lewis created a racially antagonistic classroom environment, in which Ms. Staeheli and other White students faced negative treatment from Dr. Lewis and fellow classmates because of their skin color, leaving Ms. Staeheli worried she could not engage in Practicum discussions without being attacked or mocked.  Nevertheless, Ms. Staeheli spoke up in class and expressed criticism in assignments, receiving poor marks.  Dr. Lewis allegedly frequently told Ms. Staeheli and other White students that they would fail her course if they did not openly acknowledge their "white fragility" and "white supremacist tendencies," without imposing similar requirements on students of other races.  (*Id.* at 8.)

On July 11, 2020, Ms. Staeheli reported her concerns about Dr. Lewis' course and the racial harassment she experienced from classmates to the Adler administration, which did not resolve the issues.  (*Id.* at 9.)  Ms. Staeheli's complaint got back to Dr. Lewis, who informed the class that a White female student had made a complaint against her "because the student was struggling with her white fragility and refusing to accept her white supremacy and white privilege."  (*Id.*)  Thereafter, Dr. Lewis gave Ms. Staeheli low grades, which Ms. Staeheli believes was in retaliation for disagreeing with her and lodging a complaint.  (*Id.*)  Then, the Adler administration refused to sign Ms. Staeheli's application to obtain her temporary counseling license, which she also believes was in retaliation for having disagreed with and complained about Dr. Lewis.  (*Id.* at 10.)  Ms. Staeheli submitted a written complaint to the Office of Civil Rights at the Department of Education and

1  withdrew from Adler.  (*Id.* at 11.)  Since, Adler has withheld Ms. Staeheli's transcripts,

2  preventing her from transferring credits to other universities.  (*Id.* at 12.)

3       On January 22, 2021, Ms. Staeheli filed suit in this Court.  (Doc. 1.)  The operative

4  complaint brings Title VI claims for discrimination, harassment, and retaliation, and state

5  law claims for breach of contract and breach of the implied covenant of good faith and fair

6  dealing. (Doc. 7.) On March 18, 2021, Adler filed its motion to dismiss for lack of personal

7  jurisdiction or for *forum non conveniens*, which is now ripe.

8       When faced with a defendant's motion to dismiss for lack of personal jurisdiction,

9  a plaintiff bears the burden of establishing that jurisdiction is proper.  *Boschetto v. Hansing*,

10 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted).  If the Court, as here, decides the

11 motion without an evidentiary hearing, the plaintiff need only make a prima facie showing

12 of the jurisdictional facts and "[c]onflicts between the parties over statements contained in

13 affidavits must be resolved in plaintiff's favor."  *Id.* (quoting *Schwarzenegger v. Fred*

14 *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  Personal jurisdiction may be general

15 or specific.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  Because Ms. Staeheli

16 concedes the absence of general jurisdiction, the Court will focus its analysis on specific

17 personal jurisdiction.

18      To establish specific personal jurisdiction over a non-resident defendant, the

19 following three-prong test must be met: "(1) The non-resident defendant must purposefully

20 direct [its] activities or consummate some transaction with the forum or resident thereof;

21 or perform some act by which he purposefully avails himself of the privilege of conducting

22 activities in the forum, thereby invoking the benefits and protections of its laws; (2) the

23 claim must be one which arises out of or relates to the defendant's forum-related activities;

24 and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e.,

25 it must be reasonable." *Schwarzenegger*, 374 F.3d at 802.  The plaintiff has the burden of

26 proving the first two prongs.  *Id.*  If the plaintiff is successful, the burden shifts to the

27 defendant to show that being subject to the jurisdiction of the forum state would be

28 unreasonable.  *Id.*  Applying the three-prong test to the facts as construed in Ms. Staeheli's

favor, the Court concludes that exercise of specific personal jurisdiction over Adler is proper.

The Court begins with the "purposeful direction" prong. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). When considering whether a defendant purposefully directed its activity towards the relevant forum, the Ninth Circuit applies an "effects" test, in which the plaintiff must prove that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc v. La Ligue Contre Le Racisme*, 433 F.3d 1199 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803). The Court will address the three "effects" prongs, in turn.

First, Adler committed an intentional act when it provided an education to Ms. Staeheli through its online doctoral program. Second, Adler expressly aimed its acts at the state of Arizona.[2] Notably, "[a]n internet domain name and passive website alone are not . . . enough to subject a party to jurisdiction," *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1153, 1158 (9th Cir. 2006), and to determine whether the second "effects" prong is met, the Court must look to 'the interactivity of the defendant's website, . . . geographic scope of the defendant's commercial ambitions, . . . and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Marvix Photo v. Brand Tech., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). A balancing of these considerations indicates that the second effects prong has been met. Adler's website is highly interactive. Visitors can not only access information concerning the university, but also can create an account, submit applications, and once admitted, access the online education portal—Adler Connect— through which Adler delivers its instruction and education services through tools such as message boards and video meetings. Next, Adler's commercial ambitions are far-ranging.

---

[2] Even though online education is not particularly novel, the parties have provided the Court no binding precedent, and the Court has encountered none, which has considered a similar personal jurisdiction argument as applied to online universities sued by remote-learning students. However, Ninth Circuit law involving online personas and interactions, generally, leads the Court to its conclusion.

Its educational services are offered in all fifty states and across the globe.  However, even though Adler provides its services to students throughout the world, it nevertheless targets Arizonans.  It lists specific resources for Arizona students on its webpage, currently educates 7 Arizonans via its online programs, and has multiple employees located in the state of Arizona.  Moreover, it specifically targeted Ms. Staeheli, whom—as the evidence overwhelming indicates[3]—it knew to be an Arizona resident, once it accepted her to its doctoral program.  Third, Adler's provision of allegedly racially discriminatory education services to Ms. Staeheli caused her harm, which Adler knew would likely be suffered in Arizona.  In sum, Ms. Staeheli has met her burden on the "purposeful direction" prong.

Turning to the second prong of the specific jurisdiction test, Ms. Staeheli has met her burden of showing that her claims arise out Adler's forum-related activities. Particularly, but for Adler's provision of educational services to Arizonans, she would not have suffered the injuries that she alleges in her operative complaint.

The burden now shifts to Adler to show that being subject to the jurisdiction of the forum state would be unreasonable.  In evaluating the reasonableness of exercising jurisdiction, the Court applies a seven-factor balancing test that weighs:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). Adler does not meet its burden because it fails to address these seven factors or otherwise argue that litigating in the District of Arizona would be *unreasonable.*  Instead, Adler contends that, if the Court finds that Ms. Staeheli has met her burden on the first two specific jurisdiction prongs, this suit should be nevertheless dismissed on *forum non*

---

[3] For example, Ms. Staeheli included information about her Arizona residency in her application materials, Adler mailed her materials—including her acceptance letter, textbooks, and financial aid refunds—to her Arizona address, and her Arizona location was often the subject of discussion with faculty and staff.

*conveniens* grounds.  Because Ms. Staeheli met her specific jurisdiction burden, and Adler failed to rebut it, the Court concludes that specific jurisdiction is present, here.

The Court now turns to Adler's *forum non conveniens* argument.  The Ninth Circuit has "treated *forum non conveniens* as 'an exceptional tool to be employed sparingly,' and not a 'doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1224 (9th Cir. 2011) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)).  To prevail, the defendant must demonstrate the existence of "an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Id.*  "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

The parties do not dispute that Illinois constitutes an adequate alternative forum. However, the balance of private and public interests does not clearly point towards trial in Illinois, for the following reasons.  Private interest factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Carijano.,* 643 F.3d at 1229 (citing *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009)).  While one professor and a couple Adler administration witnesses are located in Illinois, Ms. Staeheli is located in Arizona and her classmates are located across the country.  Illinois is therefore not a definitively more convenient forum for witnesses.  And, while the forum is undoubtedly more convenient for Adler, a corporation with significant resources, it is much less so for Ms. Staeheli, an individual.  Moreover, while Adler contends that all the evidence in this case is in Illinois, most of such evidence is in electronic form, rendering its physical origin insignificant.

Public interest factors include "(1) the local interest in the lawsuit, (2) the court's

familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Id.* at 1232. It appears Illinois does not have an overwhelmingly greater interest in hearing this case.  While Adler points out that Illinois has a local interest in holding its corporations accountable, Arizona has a similar interest in protecting its citizens from mistreatment by said corporations.  Further, both Arizona and Illinois courts are equally familiar with the governing law and would be equally burdened by assuming responsibility for the case, because—as the evidence presented by Ms. Staeheli indicates—the congestion in the District of Arizona and the Northern District of Illinois is comparable.  Finally, Adler has made no showing that the costs of resolving the dispute in Arizona would be greater.  To the contrary, Arizona's relatively lower rate for legal fees would likely result in a reduction in litigation costs.   In sum, the balancing of the private and public interest considerations does not overwhelmingly suggest that the case should be litigated in Illinois.  Adler has therefore failed to meet its *forum non conveniens* burden.

      **IT IS ORDERED** that Adler's motion to dismiss (Doc. 15) is **DENIED.**

      Dated this 24th day of May, 2021.

_____
Douglas L. Rayes
United States District Judge